UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH PEPE III | CIVIL ACTION |
| VERSUS | NO. 22-4005 |
| NEW YORK LIFE INSURANCE CO. | SECTION "R" (5) |

| | |
|---|---|
| JOSEPH PEPE III | CIVIL ACTION |
| VERSUS | NO. 22-4012 |
| SANDRA NADINE GILL | SECTION "R" (5) |

| | |
|---|---|
| JOSEPH PEPE III | CIVIL ACTION |
| VERSUS | NO. 22-4015 |
| RONALD BOWERS, ET AL. | SECTION "R" (5) |

### ORDER AND REASONS

Before the Court is defendant New York Life Insurance Company's ("New York Life") motion to consolidate plaintiff's three lawsuits and each defendant's

motion to compel arbitration.[1]  Plaintiff opposes defendants' motions.[2]  For the following reasons, the Court grants defendants' motions.

## I.    BACKGROUND

This case arises from an employment dispute.  Plaintiff worked for New York Life from 2012 until he was terminated at some point in 2022, by which point he had become a partner.[3]  Defendants Sandra Gill and Ronald Bowers worked with plaintiff at New York Life.  During the course of his employment, plaintiff signed an employment agreement ("the Partner's Agreement") that mandates arbitration of nearly all disputes arising out of employment with New York Life.  After he was terminated, plaintiff, proceeding *pro se*, filed three separate actions against defendants in Louisiana's 22nd Judicial District Court during a one-week period in September of 2022, bringing a litany of claims.[4]  His meandering complaints are difficult to follow, but the gist of plaintiff's claims appears to be that he was electronically surveilled, on his personal devices, by New York Life in violation of

---

[1] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Docs. 9 & 12; *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 6; *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 10.
[2] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Docs. 11 & 16; *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 12.
[3] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Doc. 1-2 at 3-4; *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 1-2 at 3.
[4] *Id.*

Louisiana law and later retaliated against for reporting workplace misconduct and violations of securities laws.[5] Mr. Pepe's laundry list of grievances also includes the following allegations: defendant Bowers went "out of his way to try and set up an employee to commit adult[e]ry with two female employees,"[6] which he attempted to record via "ring door bell cameras";[7] "illegal covid tests";[8] "elderly abuse";[9] extortion;[10] a "cyber attack";[11] and impersonation of government authorities by defendants.[12] He cites a variety of Louisiana statutes in support of his claims, many of which do not provide a private cause of action.

All three of plaintiff's lawsuits were removed to federal court on the basis of diversity jurisdiction on October 19, 2022.[13] Defendants each filed motions to compel arbitration, and New York Life filed a motion to consolidate the three

---

[5] *See generally Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Doc. 1-2; *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 1-2; *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 1-2.

[6] *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 1-2 at 3. It is not clear if Pepe is the employee in question, as the complaints refer to plaintiff as "Mr. Pepe" in another instances.

[7] *Id.*

[8] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Doc. 1-2 at 4.

[9] *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 1-2 at 3. Nothing in the complaint suggests that plaintiff is a senior citizen or was discriminated against on the basis of age.

[10] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Doc. 1-2 at 4.

[11] *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 1-2 at 3.

[12] *Id.*

[13] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Doc. 1; *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 1; *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 1.

matters shortly thereafter.[14] Plaintiff opposes the motions. The Court considers the motions below.

## II. MOTION TO CONSOLIDATE

Federal Rule of Civil Procedure 42(a)(2) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Accordingly, the mechanism should be used to "eliminate unnecessary repetition and confusion." *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984) (citing *In re Air Crash Disaster*, 549 F.2d 1006, 1013 (5th Cir. 1977)). Further, trial courts are afforded broad discretion in deciding whether to consolidate cases. *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985).

As noted by defendants, the relevant question at this stage in the litigation—whether the Court should enforce the Partner's Agreement, which purportedly mandates arbitration of the disputes pursuant to the Federal Arbitration Act—is common to all three cases.[15] While plaintiff nominally opposes New York Life's

---

[14] *Pepe v. New York Life Ins. Co.*, No. 22-4005 (E.D. La.), R. Docs. 9 & 12; *Pepe v. Gill*, No. 22-4012 (E.D. La.), R. Doc. 6; *Pepe v. Bowers*, No. 22-4015 (E.D. La.), R. Doc. 10.

[15] *See Pepe v. New York Life Ins. Co.*, 22-4005 (E.D. La.), R. Doc. 9; *Pepe v. Gill*, 22-4012 (E.D. La.), R. Doc. 6; *Pepe v. Bowers*, 22-4015 (E.D. La.), R. Doc. 10.

4

motion to consolidate, he offers no germane arguments or applicable law in support of his position. Rather, he largely re-asserts the merit of his claims and cites a portion of Partner's Agreement noting that the arbitration clause does not cover certain disputes, which he does not expound upon at all.[16] Accordingly, because all three cases arise out of Pepe's employment with New York Life and his workplace experiences, and all three require consideration of the Partner's Agreement, the Court grants defendants' motion to consolidate. *See* Fed. R. Civ. P. 42(a).

## III.   MOTIONS TO COMPEL ARBITRATION

### A.   Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, expresses a strong federal policy in favor of enforcing arbitration agreements. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding

---

[16]   *See, e.g., See Pepe v. New York Life Ins. Co.*, 22-4005 (E.D. La.), R. Doc. 16.

>is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The Supreme Court has explained that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Further, "any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the Court must complete a two-step inquiry. *Id.* at 293. First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.* This determination ordinarily involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* But when the parties' agreement contains a delegation clause, the Court simply analyzes whether there is a valid agreement, and if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). Second, if the Court determines that the parties have agreed to arbitrate the dispute in question, it "then must

6

determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

### B. Discussion

The Court determines that there is a valid agreement to arbitrate and that there is "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability. *See FloaTEC, L.L.C.*, 921 F.3d at 514. The agreement at issue contains the following arbitration provisions, including a provision delegating the issue of arbitrability to the arbitrator:

> a. The Partner and New York Life (**which includes New York Life**, NYLIFE Securities LLC **and** their affiliates, successors, **employees and agents**) agree that **any dispute,** claim, request for equitable relief, or controversy **arising between them**, including but not limited to those alleging wrongful or unlawful discharge or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation or rule (hereinafter "the Claim"), **as well as any dispute as to whether such Claim is arbitrable** . . . , **shall be resolved by a final and binding arbitration proceeding** administered by [FINRA] in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.
>
> b. The following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect: (1) claims for workers' compensation benefits (except for claims of retaliation or discrimination), unemployment insurance, or state or federal disability insurance; (2) claims for benefits under a plan that is governed by the Employee Retirement

> Income Security Act of 1974 ("ERISA"); (3) matters within the jurisdiction of the National Labor Relations Board; and (4) any other dispute or claim that has been excluded from arbitration by applicable law that is not preempted by the Federal Arbitration Act.
>
> c. In the event that a claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Claim, the Partner and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall . . . be resolved by a sole arbitrator in a final and binding arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.
>
> d. **The Partner and New York Life both agree to waive any right to a jury trial** with respect to any Claim covered by this Agreement.[17]

Here, the analysis is straightforward. There is a clearly binding agreement to arbitrate. The agreement contains a plain arbitration provision, and plaintiff raises no legal question as to validity. Second, the Court must determine whether the parties' agreement contains a valid delegation clause. *FloaTEC, L.L.C.*, 921 F.3d at 514 (quoting *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)). The Partner's Agreement plainly provides that "any dispute as to whether [plaintiff's] Claim is arbitrable . . . shall be resolved by a final and binding arbitration proceeding."[18] Plaintiff presents no argument or evidence contradicting the intent of this provision. There is clear and unmistakable evidence that the parties intended to arbitrate the issue of arbitrability. Because the Partner's Agreement

---

[17]   *Pepe v. Gill*, 22-4012 (E.D. La.), R. Doc. 11-3 at 7-8 (emphasis added).
[18]   *Pepe v. Gill*, 22-4012 (E.D. La.), R. Doc. 11-3 at 7.

"delegates the arbitrability question to an arbitrator, [the Court] may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Finally, the Court considers whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. This includes "whether any federal statute or policy renders the claims non-arbitrable." *Conegie*, 492 F.3d at 598 (citations omitted).[19] Here, plaintiff points to no federal or state law that would preclude enforcement of the arbitration agreement. Indeed, plaintiff provides essentially no law or argument on why the Court should not compel arbitration. He merely reasserts the veracity of his claims and the gravity of the situation. Therefore, the Court grants defendants' motions, compels arbitration,

---

[19] To be sure, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 exempts sexual harassment claims arising after its enactment from compelled arbitration. *See* 9 U.S.C. § 402. Though plaintiff's complaints mention "harassment," he does not bring a claim for sexual harassment under any state or federal statute. Nor does he allege facts that suggest he was a victim of sexual harassment. Defendant's use of the word "harassment" alone, without supporting legal or factual allegations, does not bring his case within the ambit of 9 U.S.C. § 402. Therefore, despite plaintiff's *pro se* status, the Court will not presume that a sexual harassment claim exists in the ether where none is alleged. *Cf. Jones v. Alfred*, 353 F. App'x 949, 952 (5th Cir. 2009) (noting that while courts must read *pro se* filings liberally, they are not to "invent, out of whole cloth, novel arguments on behalf of a pro se plaintiff in the absence of meaningful, albeit imperfect, briefing"); *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("Even a liberally construed pro se civil rights complaint, however, must set forth facts giving rise to a claim on which relief may be granted.").

stays the litigation, and administratively closes the consolidated case pending a final decision from the arbitrator or panel.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions.  This case is hereby stayed and administratively closed pending arbitration of the above-captioned disputes.

New Orleans, Louisiana, this __7th__ day of February, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE